UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHRISTOPHER STRONG,

        Plaintiff,

v.

UNKNOWN PARTY et al.,

        Defendants.
_____/

Case No. 1:24-cv-528

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's official capacity claims and Eighth Amendment claims premised upon the denial of medical attention. Plaintiff's Eighth Amendment conditions of confinement claims against Defendants in their individual capacities will remain in the case.

**Discussion**

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues the following ICF staff in their individual and official capacities: Correctional Officers (C/Os) Unknown Party, Unknown Keebaugh, and Unknown Beeler; and Sergeants Unknown Cook and Unknown Jones. (Compl., ECF No. 1, PageID.1, 3–5.)

In Plaintiff's complaint, he alleges that on December 24, 2022, the inmate in the cell next to Plaintiff's cell (inmate Johnson) rubbed feces and urine "all over his cell window and on his cell floor." (*Id.*, PageID.6–7) Plaintiff states that the smell was "so loud and foul" that Plaintiff was unable to eat his meals. (*Id.*, PageID.7.) During second shift, Plaintiff asked Defendant Unknown Party if inmate Johnson could be "cleaned up," explaining that he could not eat due to "the foul smell." (*Id.*, PageID.7–8.) Plaintiff's request was denied. (*Id.*, PageID.8.)

Thereafter, at around 6:40 p.m. that same day, inmate Johnson activated the sprinkler in his cell, flooding inmate Johnson's cell. (*Id.*) The water, which was filled with feces and urine, then came into Plaintiff's cell. (*Id.*) Plaintiff told Defendant Unknown Party "that the feces from his neighbor's . . . cell [had] flooded into his cell," and Plaintiff asked to receive cleaning supplies and to be removed from his cell. (*Id.*, PageID.9.) Defendant Unknown Party advised Plaintiff that he would "see what he could do," however, Defendant Unknown Party "never brought Plaintiff any cleaning supplies or removed . . . Plaintiff from his feces[-]contaminated cell." (*Id.*)

At some point, inmate Johnson's other neighbor took his food slot hostage due to the feces and urine filled water that had also flooded into his cell, and Defendants Cook and Jones responded to this issue. (*Id.*, PageID.9–10.) Plaintiff then informed Defendants Cook and Jones that his cell

was also "contaminated with feces and urine," and asked to be removed from his cell or to receive cleaning supplies. (*Id.*, PageID.10.) Defendants Cook and Jones denied Plaintiff's requests. (*Id.*)

Subsequently, during third shift, Plaintiff "stopped Defendant C/O Keebaugh and begged . . . and made the same request that he made to the other above Defendants." (*Id.*, PageID.11.) Defendant Keebaugh denied Plaintiff's request, explaining that he could not "open slot[s] or doors on 3rd shift." (*Id.*) At some point after this, Plaintiff "vomited repeatedly" due to the "foul smell of feces and urine," and Plaintiff had "throat [illegible] and chest pains." (*Id.*) "Plaintiff then stopped Defendant C/O Beeler and informed him that [Plaintiff was] having headaches and chest pains and he just vomited because [of] the feces [and] urine" in the cell. (*Id.*, PageID.11–12.) Plaintiff again asked for cleaning supplies and to be removed from the cell, and Plaintiff also asked to see nursing staff. (*Id.*, PageID.12.) In response, Defendant Beeler told Plaintiff that he was unable to open "slots or doors on 3rd shift[;] also there's not a nurse on duty on 3rd [shift]." (*Id.*) In total, Plaintiff states that he "endured these conditions for nearly 18 hours." (*Id.*) Afterwards, Plaintiff had "suicidal thoughts." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his Eighth Amendment rights. (*Id.*, PageID.13–14.) Plaintiff seeks a declaratory judgment, as well as compensatory and punitive damages. (*Id.*, PageID.14–15.) Plaintiff also "seek[s] recovery of his cost[s] in this suit." (*Id.*, PageID.16.)

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Official Capacity Claims

Plaintiff sues Defendants in their individual and official capacities. (Compl., ECF No. 1, PageID.1, 3–5.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and

their departments are immune from suit in the federal courts under the Eleventh Amendment, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages as well as a declaratory judgment. An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective

injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102.

In the present action, Plaintiff does not allege the existence of an official policy or practice, or suggest that the activities alleged in the complaint are likely to occur to him again. Instead, Plaintiff's allegations relate solely to past harm, not future risk of harm. Therefore, Plaintiff does not seek relief properly characterized as prospective. *See Ladd*, 971 F.3d at 581. Moreover, the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3,

1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer confined at ICF, which is where he avers that Defendants are employed. Thus, Plaintiff cannot maintain his claims for declaratory relief against Defendants, and the Court will dismiss these claims.

Accordingly, for the reasons set forth above, Plaintiff's official capacity claims against Defendants will be dismissed.

      **B.**     **Eighth Amendment Claims**

          **1.**     **Conditions of Confinement**

Plaintiff alleges that the conditions of his confinement starting on December 24, 2022, and lasting for an approximately 18-hour period violated his Eighth Amendment rights. (*See* Compl., ECF No. 1, PageID.6, 14.)

The Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80

(6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiff alleges that he was confined in a cell that was flooded with feces and urine for an approximately 18-hour period, and that Plaintiff alerted each Defendant to this issue, but that each Defendant denied Plaintiff's request for cleaning supplies or to be removed from the cell. (*See* Compl., ECF No. 1, PageID.8–12.) Plaintiff further alleges that as a result of his confinement in this cell, he vomited and had "headaches and chest pains." (*Id.*, PageID.11–12.)

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Accordingly, although Plaintiff has by no means proven his claims, the Court will not dismiss Plaintiff's Eighth Amendment conditions of confinement claims against Defendants in their individual capacities on initial review. *Cf. DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (holding that exposure to non-working toilets and other inmates' urine and feces via standing water for thirty-six hours was sufficiently serious); *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (concluding that a prisoner who alleged that he was placed in "shockingly unsanitary" cells for six days, one of which was covered in "massive amounts" of feces and the other of which was equipped with only a clogged drain to dispose of bodily waste, stated a violation

8

of the Eighth Amendment). *But see Edge v. Mahlman*, No. 1:20-cv-892, 2021 WL 3725988, at *3 (S.D. Ohio Aug. 23, 2021) ("It is well-established that the presence of *some* unsanitary conditions in a cell (including fecal matter) does not establish an Eighth Amendment claim, except in circumstances where the volume of matter and duration of exposure are extreme." (emphasis in original)); *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017) (concluding that an inmate's four-hour exposure to human waste due to flooded toilet water was insufficient to state an Eighth Amendment violation).

### 2. Denial of Medical Care

In addition to Plaintiff's conditions of confinement claims, the Court construes Plaintiff's complaint to raise Eighth Amendment claims regarding the alleged denial of medical care. (*See, e.g.*, Compl., ECF No. 1, PageID.12.)

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a medical professional's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege

9

that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

As an initial matter, with respect to Defendants Unknown Party, Cook, Jones, and Keebaugh, Plaintiff fails to allege any facts to show that these Defendants knew that Plaintiff

sought medical attention. (*See generally* Compl., ECF No. 1.) Instead, Plaintiff only alleges that he asked these Defendants for cleaning supplies or to be moved from his cell. (*See id.*) Under these circumstances, Plaintiff fails to state an Eighth Amendment medical care claim against Defendants Unknown Party, Cook, Jones, and Keebaugh. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

As to Defendant Beeler, Plaintiff alleges that at some point during the 18-hour period in the flooded cell, Plaintiff "stopped Defendant C/O Beeler and informed him that [Plaintiff was] having headaches and chest pains and he just vomited because [of] the feces [and] urine" in the cell. (Compl., ECF No. 1, PageID.11–12.) Plaintiff asked Defendant Beeler for cleaning supplies and to be removed from the cell, and Plaintiff also asked to see nursing staff. (*Id.*, PageID.12.) In response, Defendant Beeler told Plaintiff that he was unable to open "slots or doors on 3rd shift[;] also there's not a nurse on duty on 3rd [shift]." (*Id.*)

The Court does not minimize Plaintiff's experience; however, although vomiting is "a clear manifestation of internal physical disorder," *see Blackmore*, 390 F.3d at 899, Plaintiff's complaint presents insufficient facts to suggest that his vomiting episode rose to the level of a serious medical need. *See, e.g.*, *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) (agreeing that an inmate failed to state an Eighth Amendment claim because his complaints of breathing problems, chest pains, and other ailments were "objectively speaking, relatively minor"); *Henderson v. Commonwealth of Va.*, No. 7:07-cv-266, 2008 WL 204480, at *15 (W.D. Va. Jan, 23, 2008)

(holding that "brief episodes of vomiting, stomach pain, and difficulty breathing" are "not sufficiently serious to give rise to an Eighth Amendment claim"). Additionally, Plaintiff does not suggest any consequences of not receiving medical treatment. It is "difficult to infer a serious medical need from the facts" as alleged by Plaintiff. *See Larkin v. Schroeder*, No. 2:20-cv-111, 2020 WL 4344985, at *5 (W.D. Mich. July 29, 2020). Plaintiff's allegations are too conclusory to show sufficiently serious medical conditions that were "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 899–900; *see Archie v. Drescher*, No. 1:23-cv-544, 2024 WL 1652269, at *4–5 (W.D. Mich. Apr. 17, 2024) (concluding, in a case that presented almost identical allegations to the present case, that the prisoner-plaintiff failed to state an Eighth Amendment claim regarding the alleged denial of medical care after his cell flooded with water filled with feces and urine, and he vomited and had difficulty breathing and chest pains).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679. There is nothing alleged in the complaint that might distinguish a deliberate indifference to Plaintiff's needs from simple negligence, which *Farmer* has held is not enough for an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").

Accordingly, for these reasons, the Court will dismiss Plaintiff's Eighth Amendment claims premised upon the denial of medical attention.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court will dismiss Plaintiff's official capacity claims and Eighth Amendment claims premised upon the denial of medical attention on the basis of immunity and

for failure to state a claim under 28 U.S.C. §§ 1915(e) and 1915A, and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment conditions of confinement claims against Defendants in their individual capacities remain in the case.

    An order consistent with this opinion will be entered.

Dated:    July 24, 2024           /s/ Jane M. Beckering
                                                        Jane M. Beckering
                                                        United States District Judge